## GILBRETH INTERNATIONAL CORPORATION

v.

## LIONEL LEISURE, INC., F.W. Woolworth Co., Gaudio Bros., Inc., and S.G. Kresge Co.

Civ. A. Nos. 76–3494, 76–3555 and 76–3438.

United States District Court, E.D. Pennsylvania.

Sept. 9, 1985.

Stanley H. Cohen, Philadelphia, Pa., for plaintiff.

Michael Cornman, New York City, Wallace D. Newcomb, James A. Drobile, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The long history of these consolidated patent infringement cases culminated on the merits when this Court permitted the plaintiff to voluntarily dismiss its complaint on the condition that it pay to the defendants their reasonable attorneys' fees and costs. *See Gilbreth International Corp. v. Lionel Leisure, Inc., et al.,* 587 F.Supp. 605 (E.D.Pa.1983). The plaintiff filed these three actions in 1976 claiming that the defendants had infringed a patent issued to the plaintiff in 1974 with respect to a band

of heat-shrinkable plastic used in decorating objects such as Christmas ornaments and Easter eggs. For reasons stated at length in this Court's prior opinion cited above, the Court determined that the plaintiff's conduct in the procurement of the patent constituted "fraud upon the Patent Office and was so reckless and tainted by bad faith that the defendants are entitled to a reasonable attorney's fee in connection with their defense of the plaintiff's suit against them" pursuant to 35 U.S.C. § 285, which provides that the court "in exceptional cases may award reasonable attorney fees to the prevailing party." *Gilbreth*, 587 F.Supp. at 608.

The defendants were directed to file their petition for attorneys' fees and costs pursuant to the requirements of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) and its progeny. The plaintiff attempted to appeal this Court's Order conditioning the voluntary dismissal of plaintiff's suits upon plaintiff's payment of the defendants' attorneys' fees, but the Court of Appeals for the Federal Circuit dismissed the appeal as interlocutory pending the imposition of an attorneys' fee award. Following extensive briefing and a hearing, the attorney fee issue is now before the Court for resolution.

Six petitions for attorneys' fees and costs were submitted by counsel for the various defendants (and/or their indemnitors). The bulk of the work was performed by lead counsel Mandeville and Schweitzer, of New York City. In their twice-amended fee petition Mandeville and Schweitzer request a "lodestar" of $188,163.50, based upon a total of 1,605.55 hours expended (by a number of attorneys over the years of the litigation—primarily Michael Cornman, Esq.) at hourly rates which average $124.97. The remaining petitioners—Paul and Paul; Schnader, Harrison, Segal, & Lewis; Davis, Hardy, Ives & Lawther; Nolte and Nolte; and Jacqueline Delafuente, Esq.—request lodestars in varying amounts ranging from $390 for Ms. Delafuente to $104,696.75 for Paul and Paul. The defendants' *total* requested lodestar

amounts to $320,559.25. The defendants also seek a total of $28,082.58 in disbursements and costs. Finally, the defendants seek a quality "multiplier" of 2.0, based on the quality of the services performed (and, with respect to Mandeville and Schweitzer, the peculiar "contingent" arrangement for the payment of fees that existed between Mandeville and its client). Thus the defendants request a total fee award of $641,118.50 (two times the lodestar of $320,559.25), plus costs in the amount of $28,082.38, for a total award of $669,200.88. After careful consideration of the fee petitions submitted and the legal issues raised in connection therewith, the Court has determined, for the reasons that follow, that it will decline to apply a "multiplier" to the lodestar amounts requested, and that a total of $231,886.75 and $27,810.54 respectively, will be awarded as fair and reasonable attorneys' fees and costs in this action.

## I. *Legal Issues*

Before proceeding to the merits of the fee petitions, the Court will resolve a number of legal issues raised by the plaintiff which are applicable generally to the defendants' fee requests.

### A. *Disbursements and Costs*

■ The plaintiff contends that, as a general matter, 35 U.S.C. § 285 authorizes only an award of an attorney's fee, and does not authorize the recovery of costs and disbursements. *See Chromalloy American Corp. v. Alloy Surfaces Co., Inc.*, 353 F.Supp. 429, 433 (D.Del.1973). Subsequent to *Chromalloy*, however, the Court of Appeals for the Federal Circuit determined that a prevailing party's attorney's fee award under § 285 *does* include a recovery for costs and disbursements "necessary for the case." *Lam, Inc., v. Johns-Manville Corp.*, 718 F.2d 1056, 1069 (Fed. Cir.1983); *see also Central Soya Co., Inc. v. George A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983). Accordingly, this Court is not precluded from reviewing the

defendants' requests for costs and disbursements expended in this litigation.

## B. *Fees Expended on Appeals-Past and Future*

Petitioners Mandeville and Schweitzer and Paul and Paul have requested in their fee petitions compensation for the defense of the appeal filed by the plaintiff subsequent to this Court's Order of conditional dismissal. As noted above, this appeal was dismissed, without prejudice, as interlocutory by the Federal Circuit. The same petitioners also request a total of $38,000 in fees which counsel estimates will be incurred in defending the plaintiff's (anticipated) appeal of this Order. The plaintiff challenges the propriety of these requests.

■ With respect to the request for fees incurred in "defending" the interlocutory appeal, it seems clear that it would be inappropriate for this Court to award fees in connection with an interlocutory appeal which was dismissed "without prejudice." It has been held that the predecessor statute to § 285 did not authorize an award of attorney's fees and costs in connection with the defense of an interlocutory "petition" for an injunction filed in the Court of Appeals. *Sales Affiliates v. National Mineral Co.*, 172 F.2d 608, 613 (7th Cir.), *cert. denied* 337 U.S. 940, 69 S.Ct. 1516, 93 L.Ed. 1745 (1949). In any event, given the fact that no decision on the merits has been rendered in connection with any appeal which has been or might be filed by the plaintiff, this Court believes that it would be inappropriate for it to award attorney's fees at this point either for the appeal which was dismissed without prejudice or for the estimated costs of defending an anticipated appeal in the future. Aside from the fact that an award of an *estimated* fee for a *potential* future appeal would be speculative, to say the least, any modification on appeal of this Court's Order of dismissal might render an award of appeal fees improper. Since the Court of Appeals is authorized under § 285 to award attorney's fees and costs for services rendered in connection with the appeal, *see Rohm &*

*Haas Co. v. Crystal Chemical˙ Co.*, 736 F.2d 688 (Fed.Cir.1984), the defendants' application for fees and costs for their defense of *any* appeals filed in this matter should be addressed, in the first instance, to the Court of Appeals. Accordingly the Court will not entertain the defendants' request for fees and costs incurred either in the defense of the prior interlocutory appeal or (as estimated) to defend an anticipated appeal in the future.

## C. *Time Expended in Preparing Fee Petition*

■ The plaintiff contends that § 285 does not authorize fees incurred in the preparation of the fee petition itself. As the plaintiff points out, in assessing attorney's fees under § 285 with respect to actions involving both patent and non-patent claims, fees may be awarded only for services rendered in connection with the patent issues. *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed.Cir.1983). Although some courts interpreted this rule to preclude any award for fees incurred in the preparation of the fee petition itself, *e.g.*, *Chromalloy American Corp. v. Alloy Surfaces Co., Inc.*, 353 F.Supp. 429, 432 (D.Del.1973), more recent authorities have determined that such fees are properly included in an award under § 285. *U.S. Industries, Inc. v. Norton Co.*, 578 F.Supp. 1561, 1566 (N.D.N.Y.1984) (cases cited therein). Moreover, the Third Circuit has indicated that, in general, "in litigated statutory fee cases fee petition time is, of course, properly included in the lodestar." *In Re Fine Paper Antitrust Litigation*, 751 F.2d 562, 595 n. 26 (3d Cir.1984), citing *Danny Kresky Enterprise Corp. v. Magid*, 716 F.2d 215, 219 (3d Cir.1983). Accordingly, the Court will not eliminate those portions of the defendants' fee requests attributable to the preparation of the fee petitions.

## II. *Lodestar Determinations*

### A. *Mandeville and Schweitzer*

■ As noted at the outset, Mandeville and Schweitzer served as lead counsel in

the defense of this litigation. Mandeville and Schweitzer seek a total of $188,163.50 based upon a total of 1,605.55 hours expended by attorneys Michael A. Cornman, Fritz L. Schweitzer, Jr., Felix L. D'Arienzo, Jr., Andrew S. Langsen, Gerald J. McGowan, Jr., and Abigail F. Cousins. The current hourly rates of these attorneys range from $185 (Mr. Schweitzer) to $70 (Mr. McGowan). The plaintiff complains, with some justification, that it is difficult from the records submitted to determine precise hourly rates for the different attorneys involved at different times in the litigation. However, the plaintiff does not contend that the *average* rate billed through the course of the litigation—$124.97—by Mandeville and Schweitzer is an unreasonable hourly rate. Generally, of course, "the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered." *In Re Fine Paper Antitrust Litigation*, 751 F.2d at 590. The Court finds that the hourly rates charged by the attorneys for Mandeville and Schweitzer in this complex patent litigation are fair and reasonable rates.

 The plaintiff does take issue with numerous hourly entries submitted by Mandeville and Schweitzer on a variety of grounds. Many of the plaintiff's objections were cured by subsequent amendments to the fee petition. However, the Court has reviewed the twice-amended fee petition, and the plaintiff's objections thereto, and finds that at least some of the plaintiff's complaints are justified. The primary deficiency is the presence of numerous entries labelled simply "attention to file", with no supporting explanation of the work which was performed, which appear in the time records of Mr. Cornman. It is, of course, the petitioner's responsibility to provide adequate documentation for services performed and time expended; vague and insufficiently documented entries may be disallowed. *See In Re Fine Paper Antitrust Litigation*, 751 F.2d at 595–96. Although in general the petition submitted by Mandeville and Schweitzer adequately provides "some evidence to support the reasonable-

ness of ... the number of hours expended," *Lam, Inc. v. Johns-Manville Corp.*, *supra*, 718 F.2d at 1068, the repeated "attention to file" entries set forth in Mr. Cornman's amended fee petition are vague, excessive, and will be reduced as follows: 12/22/76 (3.5 hrs.); 3/1/77 (3 hrs.); 3/28/77 (1 hr.); 4/26/77 (4 hrs.); 6/7/77 (2 hrs.); 9/27/77 (1 hr.); 9/28/77 (1.5 hrs.); 2/1/78 (3 hrs.); 2/2/78 (3.5 hrs.); 3/6/79 (2 hrs.); 7/8/80 (1.25 hrs.); 8/13/80 (1 hr.); 9/2/80 (1 hr.); 7/9/81 (1.5 hrs.); 8/14/81 (1 hr.); 9/8/81 (2 hrs.); 10/1/81 (2.75 hrs.); 10/23/81 (3 hrs.); 11/18/81 (1.25 hrs.); 12/29/81 (1.5 hrs.); 12/16/82 (2 hrs.). The total numbers of hours eliminated from Mr. Cornman's fee petition amounts to 42.75. Since it is not possible to ascertain with precision Mr. Cornman's billing rate at the specific times of the above-cited entries, (nor, indeed, even to compute an accurate "average" rate for Mr. Cornman), the Court must use the only available rate for Mr. Cornman—his current $180 hourly rate—to calculate the reduction in the lodestar, which amounts to $7,695.

The Court has reviewed the balance of the hours submitted by the Mandeville and Schweitzer attorneys and finds that such hours were reasonably and necessarily expended on the litigation at issue.

 The total lodestar requested by Mandeville and Schweitzer amounts to $188,163.50. From this amount the Court will subtract $7,695 attributable to the inadequate entries in Mr. Cornman's records. Furthermore, in accordance with the discussion set forth earlier in this Memorandum, Mandeville and Schweitzer is not entitled to fees incurred in connection with the defense of the interlocutory appeal filed by the plaintiff. From the records attached as Exhibit A to defendants' amended petition for reasonable costs and attorney's fees, and the records attached as Exhibit B to defendants' second amended petition for reasonable costs and attorney's fees, the Court has calculated that the portion of Mandeville and Schweitzer's lodestar attributable to fees incurred in connection

with the appeal amounts to $15,436. Finally, for the reasons previously discussed, Mandeville and Schweitzer will not be awarded the $18,000 fee which it estimates it will incur in defending a future appeal. Accordingly, the Court will subtract a total of $41,131 from the requested lodestar of $188,163.50, to produce a lodestar of $147,032.50, which the Court will approve as fair and reasonable. The Court also has reviewed the costs and disbursements submitted by Mandeville and Schweitzer. With the exception of $271.84 incurred in the defense of the interlocutory appeal, the Court finds that the requested costs and disbursements were reasonably and necessarily expended on the litigation, and the Court will approve a total of $19,916.12 in costs and disbursements submitted by Mandeville and Schweitzer.

B. *Paul and Paul*

■ Paul and Paul request a total lodestar amount of $104,696.75 for fees incurred in the defense of Coby Glass Products Co., an indemnitor in the litigation at issue. The following attorneys of the firm of Paul and Paul have submitted records for time expended in this litigation: Henry N. Paul, Jr., Wallace D. Newcomb, James C. McConnon, Louis J. Virelli, Jr., William H. Eilberg, and Kenneth Solomon. The bulk of the work was performed by Wallace Newcomb and Louis Virelli. The current hourly rates charged range from $220 (Mr. McConnon) to $65 (Mr. Solomon). Unlike the Mandeville and Schweitzer petition, the records submitted by Paul and Paul do allow the Court to ascertain, with a fair degree of certainty, the rates charged by the various attorneys at different times in the litigation. The *average* hourly rate charged amounts to $96.90. The Court finds that the hourly rates requested are fair and reasonable rates, in that they reflect the rates which those attorneys "normally command in the market place" for the services performed. *In Re Fine Paper Antitrust Litigation*, 751 F.2d at 590.

■ As with the Mandeville and Schweitzer petition, the plaintiff has taken issue with a number of the time entries submitted by the Paul and Paul attorneys. First, the plaintiff points out that one half hour of the 3.75 hours submitted by Henry Paul, Jr., does not indicate the nature of the services performed. Accordingly, $40 (one half hour at Mr. Paul's $80 hourly rate) will be deducted from Paul and Paul's lodestar.

■ The plaintiff next contends that the time records submitted by Mr. Newcomb include an excessive amount of "read and review time." Although Mr. Newcomb's records do contain entries reviewing certain documents, the times expended in such review generally are minimal (e.g., 0.25 hrs.), and, given Mr. Newcomb's heightened level of responsibility in this action, cannot be considered excessive. However, the Court does find some merit in the plaintiff's contention that some of Mr. Newcomb's time entries, especially those entries labelled "conference" with Mr. Virelli, are duplicative of the work performed by Mr. Virelli and are too vague to establish the nature of the services rendered. Accordingly, the Court will reduce Mr. Newcomb's requested hours by 13 hours which (at Mr. Newcomb's average hourly rate of $150 per hour) will reduce the lodestar by $1,950.

■ With respect to the hours submitted by Mr. Virelli, the Court agrees with the plaintiff's observation that the entries for 1/12/77, 6/24/80, 2/2/82, and 7/7/82 either conflict with the records submitted by Mr. Newcomb or are not apparently relevant to the litigation of this action. Accordingly, a total of five hours will be deducted from Mr. Virelli's submission, which will result (at Mr. Virelli's average rate of $85 per hour) in a reduction of $425 in Paul and Paul's requested lodestar.

The Court has reviewed the balance of the entries submitted by the attorneys for Paul and Paul, and has determined that the hours expended were reasonably and necessarily expended on the litigation and related proceedings at issue. The Court will, however, deduct a total of $4,175.50 which

it has calculated to be attributable to the time expended by Messrs. Newcomb, Virelli, and Solomon in defense of the appeal filed by the plaintiff. Additionally, as heretofore discussed, the Court will deduct the $20,000 fee estimated to be incurred in defense of an anticipated appeal in the future.

In sum, the Court has determined that the lodestar figure submitted by Paul and Paul must be reduced by a total of $26,590.50. The Court will approve a lodestar in the amount of $78,106.25 as a fair and reasonable figure for the fees attributable to Paul and Paul in this litigation. Additionally, the Court finds that the requested costs submitted by Paul and Paul are fair and reasonable, and costs will be awarded in the amount of $7,073.58.

### C. Jacqueline Delafuente, Esq., and Davies, Hardy, Ives & Lawther

■ Jacqueline Delafuente, Esq., Assistant Vice President and Assistant Secretary of defendant F.W. Woolworth Co., has submitted a petition for attorney's fees and costs incurred in defense of this litigation by herself as "house counsel" and by Davies, Hardy, Ives, & Lawther, the defendant's general counsel. Ms. Delafuente seeks a total of $390 for fees attributable to her work on this litigation. As the plaintiff points out (without response from the petitioner), this sum must be disallowed because the affidavit submitted indicates that the time expended by Ms. Delafuente was spent in her capacity as (salaried) house counsel for, and as such an employee of, F.W. Woolworth.

■ Davies, Hardy, Ives & Lawther have submitted a request for a total of $2,008 in attorneys' fees incurred on behalf of their client in this litigation. The bulk of this amount is derived from 15.5 hours expended by senior partner Kenneth W. Greenwalt, at his hourly rate of $110 per hour. The plaintiff objects to a total of two hours submitted by Mr. Greenwalt as "read and review time" which should be eliminated. Since Mr. Greenwalt was not principally involved in the defense of this litigation, the Court has determined that a total of one hour which he spent reading copies of letters which came across his desk from other participants in the litigation (i.e., entries dated 1/5/77, 3/17/77, and 3/21/77) should be eliminated. *See In Re Fine Paper Antitrust Litigation*, 751 F.2d at 579. The Court finds that the remainder of the time submitted by Davies, Hardy, Ives & Lawther was reasonably and necessarily expended on this litigation, and that the hourly rate charged by Mr. Greenwalt is fair and reasonable. The Court will approve a lodestar for Davies, Hardy, Ives, & Lawther in the amount of $1,898 as a fair and reasonable attorney's fee, and the Court also will approve the firm's request for costs in the amount of $25.

### D. Nolte and Nolte

■ Edward Hunter, Esq., has submitted a petition for attorney's fees and costs on behalf of Nolte and Nolte, of New York, which represented defendant Lionel Leisure Co. at an early stage of the litigation. Mr. Hunter requests a fee in the amount of $1,160, based on 11.6 hours expended at his customary hourly rate of $100. In addition, Mr. Hunter requests $460 which was disbursed to associate counsel in Philadelphia and billed by Nolte and Nolte to their client. The plaintiff does not object to the hours expended by Mr. Hunter, and the Court finds that his requested rate of $100 is fair and reasonable. Although the plaintiff contends that the $460 disbursement should be disallowed because it may have been included in the fee request submitted by Paul and Paul, a subsequent amendment to the defendants' petition established that the $460 was *not* included in any of the other firms' fee requests. This Court will approve a lodestar of $1,620 as a fair and reasonable attorney's fee requested by Nolte and Nolte, and will also approve the $460 requested disbursement.

### E. Schnader, Harrison, Segal, & Lewis

■ Finally, James A. Drobile, Esq., has submitted a fee petition on behalf of

Schnader, Harrison, Segal & Lewis (Schnader) for fees and costs incurred in defense of their client Gaudio Bros., Inc., in this litigation in 1977. Schnader seeks a total of $6,166 in attorney's fees and $335.84 in costs. Mr. Drobile's affidavit (and supplement thereto) presents difficulties for the following reasons: (1) although the records attached to the affidavit show that Schnader billed its client a total of $6,166 for its services, and that Mr. Drobile expended 42.4 hours on this litigation, there is no indication of the hourly rate charged for Mr. Drobile's work at *any* time in this litigation; (2) of the 42.4 hours expended by Mr. Drobile, records detailing the nature of the services performed have been submitted for only 32.3 of those hours; and (3) the total bill appears to include charges for work done by an associate of the firm at an undetermined hourly rate and for an undetermined number of hours.

■■■ Based upon Mr. Drobile's partner status in the firm and his experience in the field of patent litigation, and considering the prevailing hourly rates obtained in the marketplace for experienced patent litigators in 1977, (but keeping in mind that it is the petitioner-attorney who must bear the burden of a deficient fee application), the Court finds it equitable to assign $100 as a fair and reasonable hourly rate for Mr. Drobile's services. The Court will award a total of $3,230 as a fair and reasonable attorney's fee for the 32.3 documented hours expended by Mr. Drobile in this litigation. The undocumented remaining 10.1 hours claimed by Mr. Drobile must be eliminated, along with the balance of the amount billed to Schnader's client, as it is not possible to accurately determine the number of hours expended, the hourly rates charged, or the nature of the work performed with respect to that balance. The Court will approve Schnader's requested costs in the amount of $335.84.

## III. *Multiplier*

As noted above, the defendants request that a "multiplier" of 2.0 be applied to the lodestar amounts to effectively double the fee award. The defendants generally submit that a multiplier or upward adjustment of the lodestar is appropriate because of the "high quality" of the services rendered by counsel. Furthermore, lead counsel Mandeville and Schweitzer request a multiplier for the additional reason that receipt of their fees was "contingent" upon their obtaining an attorney's fee award (or a damages recovery from the plaintiff in one form or another) due to a peculiar fee arrangement existing between Mandeville and Schweitzer and their client, General Foam Plastics Corp. (one of the defendants' indemnitors).

■■■ As set forth above, the "exceptional case" provision in 35 U.S.C. § 285 provides that the court "in exceptional cases may award reasonable attorney fees to the prevailing parties." The purpose of this section is "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Central Soya Co., Inc. v. George A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed.Cir.1983). The rationale behind the award of an attorney's fee under § 285 is "compensatory, not punitive," and as such is designed "to compensate a prevailing party for monies which he had to spend which he would not have had to spend but for the losing party's misconduct." *Mueller Brass Co. v. Reading Industries, Inc.,* 352 F.Supp. 1357, 1381 (E.D.Pa.1972), *aff'd,* 487 F.2d 1395 (3d Cir.1973). Furthermore, unlike some statutory schemes which award attorney's fees to the prevailing party as a matter of course, (e.g., 42 U.S.C. § 1988), § 285 provides for attorney's fees only in cases deemed to be "exceptional", *i.e.,* where it has been determined that the opposing party has been guilty of "extraordinary misconduct" in connection with the litigation. *Arbrook, Inc. v. American Hospital Supply Co.,* 645 F.2d 273, 279 (5th Cir.1981). Thus, in contrast to some statutory schemes where counsel for the prevailing party recoups its attorney's fee as a matter of course, and then may pursue a "multiplier" of that fee on the basis of

exceptional factors in the case, under the patent statutory scheme the award of an attorney's fee *alone* is by definition an exceptional occurrence.

 Counsel has not cited, nor has this Court discovered, any cases applying an upward "multiplier" to the lodestar calculation of an attorney's fee awarded under § 285. However, some courts have indicated that upward adjustments of the lodestar may be available in an attorney's fee petition brought under § 285. *See Codex Corp. v. Milgo Electronic Corp.*, 717 F.2d 622, 631 (1st Cir.1983); *Stickle v. Heublein, Inc.*, 590 F.Supp. 630 (W.D.Wis. 1984).

Assuming that a requested upward adjustment of the lodestar is not precluded as a matter of law in a § 285 attorney's fee petition, this Court nevertheless will, in its discretion, decline to apply a multiplier to the lodestar calculations computed in this case. With respect to defendants' contention that the "high quality" of the legal services rendered by counsel merit such an adjustment, the Court observes that although the defendants were well-represented in this litigation, they "merely received the sophisticated, specialized representation they had a right to expect" given the high rates charged and hours expended by their counsel. *Stickle v. Heublein*, 590 F.Supp. at 639. For this reason, and especially in light of the essentially compensatory (as opposed to punitive or remunerative) purposes underlying § 285, the Court will decline to apply a multiplier to the lodestar amounts based on the "quality" of the legal services rendered.

 Mandeville and Schweitzer request a multiplier for the additional reason that the receipt of most of their fees in this litigation was contingent on their obtaining a statutory fee award (or a damages recovery) against the plaintiff, pursuant to the terms of an unusual fee agreement entered into between Mandeville and Schweitzer and their client. As this Court interprets the agreement, Mandeville and Schweitzer agreed in September of 1978 to continue the defense of the *Gilbreth* litigation on a contingency basis, *i.e.*, any attorney's fees subsequent to that date which were accrued by Mandeville and Schweitzer would have to be directly awarded by the Court under § 285 or derived in some way from a monetary recovery against the plaintiff for damages. (Contrary to the plaintiff's urging, this Court does not interpret a somewhat ambiguous provision in an informal memorandum of the fee arrangement to *limit* Mandeville and Schweitzer's *maximum* recovery to $25,000).

"Contingency" multipliers typically have been applied in class actions to compensate *plaintiffs'* counsel for undertaking a case on a contingency basis, thereby incurring (1) the risk of not succeeding at all in the litigation and (2) the cost of a long delay in obtaining payment for services. *See, e.g., In Re Fine Paper Antitrust Litigation*, 751 F.2d at 587; *Lindy Bros. Builders, Inc. v. American Radiator & Standard Corp.*, 540 F.2d 102 (3d Cir.1976) (*Lindy II*). However, in such cases the named plaintiffs invariably are unable to bear the costs of a class action lawsuit, and furthermore the risks inherent in a contingency fee arrangement generally must be considered in conjunction with the possibility of obtaining an extremely large recovery—for both the class and the attorney—from an equitable fund charged against the defendants.

In this case, of course, it is a *defendant's* counsel who entered into a peculiar contingent fee relationship with its client, on its own initiative, in litigation which, at its posture at the time, was not at all likely to produce any "damages" recovery for the defendant. This is not a class action, and no equitable settlement fund has been established. Counsel for Mandeville and Schweitzer acknowledges that at the time the contingent arrangement was established its client had the ability to pay all of its fees. Although defendant's counsel was free to enter into such an agreement, the Court has determined that in this case the fact that counsel chose to undertake an

essentially "risky" fee arrangement with its defendant-client cannot serve as a basis to *multiply,* against the plaintiff, the counsel fees generated in the litigation. This is particularly true in light of the essentially compensatory (rather than punitive or remunerative) rationale underlying § 285, as discussed above. Although defendants and their counsel may well believe they are entitled to damages from the plaintiff as a result of plaintiff's conduct in this litigation, a fee petition under § 285 is not the procedure for obtaining damages, and this Court will not sanction a damages award against the plaintiff in the guise of a fee "multiplier" in the form requested by the defendants. Finally, at the hearing on the petition for attorneys' fees counsel for Mandeville and Schweitzer candidly conceded that he was not aware of any authority justifying the application of a multiplier to a fee award under § 285 on the basis of a contingent fee arrangement between a defendant and its counsel. This Court has determined, in its discretion, that under the circumstances of this case it would be inappropriate to apply a "multiplier" to the lodestar amounts to which counsel are entitled.

*Conclusion*

■ For all of the reasons set forth above, the Court has determined that the plaintiff must pay to the defendants' counsel a total of $231,886.75 and $27,810.54 as fair and reasonable attorneys' fees and costs, respectively, incurred in this action. The fee awards and costs will be paid to the various defendants' counsel as specified in the accompanying Order.

### ORDER

AND NOW, this 9 day of Sept., 1985, upon consideration of the petition for attorneys' fees and costs submitted by counsel for the defendants in this action, for the reasons stated in this Court's Memorandum of September 9, 1985, IT IS HEREBY ORDERED that the plaintiff shall pay attorneys' fees and costs to counsel as follows:

| Counsel | Fees | Costs |
|---|---|---|
| Mandeville and Schweitzer | $147,032.50 | $19,916.12 |
| Paul and Paul | 78,106.25 | 7,073.58 |
| Davies, Hardy, Ives and Lawther | 1,898.00 | 25.00 |
| Nolte and Nolte | 1,620.00 | 460.00 |
| Schnader, Harrison, Segal, and Lewis | 3,230.00 | 335.84 |

The total amount of attorneys' fees and costs to be paid by the plaintiff is $231,886.75 and $27,810.54, respectively.