# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00465-CV

## In re American National County Mutual Insurance Company

## ORIGINAL PROCEEDING FROM HAYS COUNTY

## O P I N I O N

Relator American National County Mutual Insurance Company seeks a writ of mandamus compelling the trial court to (1) vacate its order denying American National's motion for severance and abatement and (2) enter an order severing and abating real party in interest Connie Cole's extra-contractual claims until her breach of contract claim has been resolved. We conditionally grant the writ.

## BACKGROUND

The lawsuit underlying this original proceeding arises from an automobile accident that occurred on November 24, 2009, between Cole and another driver, Estelline Bullock. Cole sued Bullock and eventually settled her claims for the limits of Bullock's insurance policy, $100,000. Cole then made a claim under the uninsured/underinsured provision ("UIM") of her own policy with American National. After rejecting American National's offer to settle her UIM claim for $5,000, Cole sued American National for breach of contract, alleging that American National failed to pay her covered UIM claim. Cole also brought extra-contractual claims for common-law bad faith and

insurance code violations.[1]  American National filed a traditional motion for summary judgment and in the alternative, a motion for severance and abatement.  Specifically, American National requested that the trial court sever Cole's extra-contractual claims, place those claims into a separate cause, and abate that cause pending final resolution of Cole's claim for breach of contract.  The trial court denied the motions and this mandamus proceeding followed.

## STANDARD OF REVIEW

Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004).  A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it amounts to clear and prejudicial error of law.  *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex.

---

[1]  Cole's common-law bad faith claims are premised on allegations that American National failed to "effectuate a prompt, fair, and equitable settlement of her [UIM] claim."  Cole's insurance code violations are premised on allegations that American National failed to "attempt to effectuate a prompt, fair, and equitable settlement of Plaintiff's claims" and engaged in "unfair claim settlement practices."  Specifically, Cole alleges that American National violated chapter 451 of the insurance code by:  (1) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; (2) refusing, failing, or unreasonably delaying an offer of settlement under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy; and/or (3) delaying or refusing settlement of a claim solely because there is other insurance of a different type available to satisfy all or part of the loss forming the basis of the claim.  Cole alleges that American National violated chapter 542 by:  (1) not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear; (2) compelling policyholders to initiate suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them; and/or (3) failing to promptly pay on a claim within fifteen business days after a policyholder submits all proof of loss documentation, within five business days after a policyholder satisfies all requests for additional documentation, or, failing to pay on a claim altogether within sixty (60) days of receiving all documentation required to process and pay a claim.

2

1992); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). With respect to resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Walker*, 827 S.W.2d at 840. The relator must establish that the trial court reasonably could have reached only one decision. *Id*. On the other hand, the trial court has no discretion in determining what the law is or applying the law to the facts. *Id*. Thus, the trial court abuses its discretion when it fails to analyze the law correctly. *Id*.

## DISCUSSION

**Severance**

A severance divides a lawsuit into separate and independent causes, which then proceed to individual judgments. *See* Tex. R. Civ. P. 41 ("Any claim against a party may be severed and proceeded with separately."). Severance is appropriate if: (1) the controversy involves more than one cause of action, (2) the severed claim is one that could be asserted independently in a separate lawsuit, and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Guaranty Fed. v. Horseshoe Operating*, 793 S.W.2d 652, 658 (Tex. 1990).

In the context of insurance coverage cases, it is well established that extra-contractual claims, such as bad faith claims, and contract claims related to insurance coverage are by their nature, independent claims that are subject to severance. *See Akin*, 927 S.W.3d at 629 ("Insurance coverage claims and bad faith claims are by their nature independent."); *In re Allstate Ins. Co.*, 232 S.W.3d 340, 343 (Tex. App.—Tyler 2007, orig. proceeding) (noting that extra-contractual

3

claims can be severed from breach of contract claims in insurance cases); *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 672-73 (Tex. App.—Houston 1993, orig. proceeding) ("A breach of an insurance contract claim is separate and distinct from bad faith, [i]nsurance [c]ode or [deceptive trade practices act] causes of action."). Thus, the issue in this case is not whether the trial court *could* have ordered severance of Cole's extra-contractual claims, but whether the trial court was required to do so. American National argues that because it made an offer to settle Cole's UIM claim, trying Cole's breach of contract claim together with her extra-contractual claims would unduly prejudice American National. Consequently, American National argues, the trial court abused its discretion in failing to sever Cole's extra-contractual claims.

A trial court has broad discretion in determining whether to sever a lawsuit into separate suits. *Akin*, 927 S.W.2d at 629. However, that discretion is not unlimited. *In re General Agents Ins. Co. of Am., Inc.*, 254 S.W.3d 670, 673 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). A trial court's refusal to order a severance constitutes an abuse of discretion "when all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion and the legal rights of the parties will not be prejudiced thereby." *See Womack v. Berry*, 291 S.W.2d 677, 682-83 (Tex. 1956) (orig. proceeding); *In re Hochheim Prairie Farm Mut. Ins. Ass'n*, 296 S.W.3d 907, 912 (Tex. App.—Corpus Christi 2009, orig. proceeding); *In re General Agents Ins. Co. of Am.*, 254 S.W.3d at 673-74.

In *Liberty National Fire Insurance Company v. Akin*, the Texas Supreme Court was confronted with the same issue presented in this case—whether the trial court abused its discretion

4

when it denied the insurer's motion to sever and abate the insured's bad faith claim pending a determination on the insured's breach of contract claim. 927 S.W.2d at 628. While the supreme court held that severance was not required in that case, it recognized that severance of extra-contractual claims from contractual claims may be necessary in certain cases. *Id*. at 630. The supreme court explained:

> A severance may nevertheless be necessary in some bad faith cases. A trial court will undoubtably confront instances in which evidence admissible only on the bad faith claim would prejudice the insurer to such an extent that a fair trial on the contract claim would become unlikely. One example would be when the insurer has made a settlement offer on the disputed contract claim. As we have noted, some courts have concluded that the insurer would be unfairly prejudiced by having to defend the contract claim at the same time and before the same jury that would consider evidence that the insurer had offered to settle the entire claim. While we concur with these decisions, we hasten to add that evidence of this sort simply does not exist in this case. In the absence of a settlement offer on the entire contract claim, or other compelling circumstances, severance is not required.

*Id*. (citations omitted).

Following *Akin*, a majority of intermediate courts of appeals have concluded that it is an abuse of discretion for a trial court to refuse to grant a severance of contractual claims from extra-contractual claims when an offer of settlement has been made by the insurer. *See In re Allstate Cnty. Mut. Ins. Co.*, 352 S.W.3d 277, 278 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (*citing State Farm Mut. Auto Ins. Co. v. Wilborn*, 835 S.W.2d 260, 262 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding)); *In re Miller*, 202 S.W.3d 922, 926 (Tex. App.—Tyler 2006, orig. proceeding); *In re Trinity Universal Ins. Co.*, 64 S.W.3d 463, 468 (Tex. App.—Amarillo 2001, orig. proceeding); *Texas Farmers Ins. Co. v. Stem*, 927 S.W.2d 76, 80 (Tex. App.—Waco 1996, orig. proceeding); *see also In re State Farm Mut. Auto Ins. Co.*, No. 08-12-176-CV, 2012 Tex. App.

5

LEXIS 6537, at *5-6 (Tex. App.—El Paso Aug. 8, 2012, orig. proceeding); *In re Allstate Prop. & Relator Cas. Ins. Co.*, No. 02-07-141-CV, 2007 Tex. App. LEXIS 4328, at *2-3 (Tex. App.—Fort Worth May 30, 2007, orig. proceeding) (mem. op.); *In re Progressive Cnty. Mut. Ins. Co.*, No. 09-07-00011-CV, 2007 Tex. App. LEXIS 889, at *1-2 (Tex. App.—Beaumont Feb. 8, 2007, orig. proceeding) (mem. op.); *In re Maryland Cas. Co.*, No. 04-06-413-CV, 2006 Tex. App. LEXIS 11209, at *4-5 (Tex. App.—San Antonio Aug. 2, 2006, orig. proceeding) (mem. op.); *but see Allstate Ins. Co. v. Evins*, 894 S.W.2d 847, 850 (Tex. App.—Corpus Christi 1995, orig. proceeding) (denial of motion to sever contractual and extra-contractual claims was proper because it was assumed that jury would follow limiting instruction to limit their consideration of settlement offers in determining bad faith claims). In reaching this conclusion, many of these courts of appeals have explained that, when the insurer has made an offer of settlement on a disputed contract claim, a court's refusal to sever contractual claims from extra-contractual claims creates an irreconcilable conflict between the parties' competing interests at trial. *See, e.g.*, *In re Allstate Ins. Co.*, 232 S.W.3d at 343; *Millard*, 847 S.W.2d at 673; *Wilborn*, 835 S.W.2d at 261; *see also In re State Farm Mut. Auto Ins. Co.*, 2012 Tex. App. LEXIS 6537, at *6-7 ("Absent severance, an insurer is presented with a 'Catch-22' in that its decision to admit or exclude evidence of a settlement offer jeopardizes the successful defense of the other claim."). More specifically, a conflict arises from the parties' competing interests in excluding and admitting evidence of the insurer's offer of settlement, and only a severance can adequately protect their rights. *See, e.g.*, *Wilborn*, 835 S.W.2d at 261-62.

Under rule 408 of the Texas Rules of Evidence, settlement offers are not admissible to prove liability for, or invalidity of, the claim or its amount, but may be admissible for another

6

purpose. Tex. R. Evid. 408. This exclusion of settlement offers promotes the settlement of claims and recognizes that "such evidence does not represent a party's actual position, but is an amount he is willing to give or take to avoid the expense and annoyance of litigation." *Wilborn*, 835 S.W.2d at 261. When an insurer has made an offer to settle a disputed contract claim, a conflict arises between the parties' right to introduce the settlement offer in trying the bad faith claim and the insurer's right to exclude the evidence in the defense of the contract claims. *See In re Allstate Ins. Co.*, 232 S.W.3d at 343 (citing *Millard*, 847 S.W.2d at 673). On one hand, the exclusion of the settlement offer in trial would unfairly deny the insured the use of the evidence to prove essential elements of the bad faith claim. *Millard*, 847 S.W.2d at 673. At the same time, admission of the settlement offer would deny the insurer the right to exclude evidence unfairly implicating that it has admitted liability on the contract claims. *Id.* Accordingly, in this situation, the trial court can only reach one decision which adequately protects the parties' rights and that is to order severance of the two types of claims. *See, e.g.*, *Wilborn*, 835 S.W.2d at 262.

Based on the record before us, there can be no dispute that American National offered to settle Cole's entire UIM claim, and Cole does not claim otherwise. Because we agree that severance is necessary to avoid the unfair dilemma that American National would face in simultaneously defending Cole's contractual and extra-contractual claims, we conclude that the trial court abused its discretion in denying American National's motion for severance. *See In re Republic Lloyds*, 104 S.W.3d 354, 358 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) ("Thus, pursuant to *Akin*, a severance is required when the insurer has made a settlement offer on the entire breach of contract claim.").

7

**Abatement**

In most circumstances, a trial court's decision to grant or deny a motion to abate is within the court's discretion. *In re Allstate Cnty. Mut.*, 209 S.W.3d 742, 746 (Tex. App.—Tyler 2006, orig. proceeding). In this case, American National contends that the trial court abused its discretion in failing to abate Cole's extra-contractual claims because, according to American National, both severance *and* abatement are required whenever "a plaintiff has filed a breach of contract claim as well as extra-contractual claims, and a settlement offer has been made." American National argues that absent an abatement it will "be put through the effort and expense of answering discovery, producing documents and witnesses, engaging experts and preparing for trial on issues that are not ripe for litigation and may be rendered moot by the trial." In response, Cole argues that the trial court did not abuse its discretion in failing to abate her extra-contractual claims. Specifically, Cole argues that there is no bright-line rule requiring the abatement of extra-contractual claims in insurance cases, even when the insurer has made an offer of settlement, and there is no necessity for the trial court to abate her extra-contractual claims in this case.

In support of her argument, Cole relies on the Texas Supreme Court's decision in *Akin*. In *Akin*, the supreme court rejected the assertion that a separate trial on extra-contractual claims required, as a matter of law, that the court also abate those extra-contractual claims pending a final judgment on the contract claims. 927 S.W.2d at 630-31. The supreme court explained:

> [W]e disagree with Liberty National's argument that our decision in *Stoker* mandates that the trial court should abate a severed bad faith claim until it renders a final judgment and perhaps all appeals have been exhausted on the contract claim. While *Stoker* held that a judgment for the insurer on the coverage claim prohibits recovery

8

premised only on bad faith denial of a claim, it does not necessarily bar all claims for bad faith.

*Id.* at 631. Based on this language, we agree that the abatement of extra-contractual claims is not necessarily required, as a matter of law, in every insurance case where the insurer has offered to settle the insured's contract claim. *But see In re Allstate Cnty. Mut. Ins. Co.*, 352 S.W.3d at 278 ("In cases in which contractual and extra-contractual claims are being pursued simultaneously, this court repeatedly has held that extra-contractual claims must be severed and abated when the insurer has made a settlement offer on the contract claim.").

However, consistent with *Akin*, a number of our sister courts have held that abatement of extra-contractual claims is required when, under the circumstances, both parties would incur unnecessary expenses if the breach of contract claim were decided in the insurer's favor. *See Millard*, 847 S.W.2d at 673 (noting that abatement was necessary because insured's bad faith, insurance code, and deceptive trade practices act claims depended on outcome of contractual cause of action); *see In re Progressive Cnty. Mut. Ins. Co.*, 2007 Tex. App. LEXIS 889, at *3 ("Abatement of the bad faith claim necessarily accompanies severance because the scope of permissible discovery differs in the two types of claims and without abatement the parties will be put to the effort and expense of conducting discovery on claims that may be disposed of in a previous trial."); *In re Allstate Prop. & Relator Cas. Co.*, 2007 Tex. App. LEXIS 4328, at *3 (holding that abatement was required, noting that "the court, as well as the parties, would be put to the expense and effort of preparing and trying extracontractual claims that may be disposed of in the resolution of the breach of contract claim"). In these cases, the courts of appeals concluded that abatement was necessary because a determination

on the contract claim in favor of the insurer would have negated the insured's extra-contractual claims. *See, e.g.*, *Millard*, 847 S.W.2d at 673. Without abatement, the parties would be put to the effort and expense of conducting discovery and preparing for trial of claims that may be disposed of in a previous trial. *Id.*; *see Akin*, 927 S.W.2d at 629 ("[I]n most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract.").

In addition, in the context of UIM cases specifically, several courts of appeals have recently concluded that abatement of extra-contractual claims is necessary as a consequence of the unique hurdles faced by plaintiffs asserting UIM contract claims. *See In re United Fire Lloyds*, 327 S.W.3d 250, 256 (Tex. App.—San Antonio 2010, orig. proceeding) (discussing *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006)); *see also In re Old Am. Cnty. Mut. Fire Ins. Co.,* No. 13-11-00412-CV, 2012 Tex. App. LEXIS 1293, at *12-13 (Tex. App.—Corpus Christi Feb. 16, 2012, orig. proceeding) (mem. op.) (following *In re United Fire Lloyds*). In a UIM case, "[t]he UIM insurer is obligated to pay damages which the insured is 'legally entitled to recover' from the underinsured motorist."[2] *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d at 818; *see In re United Fire Lloyds*, 327 S.W.3d at 256. In *Brainard v. Trinity Universal Insurance Company*, the supreme court determined that this language means that "the UIM insurer is under no contractual duty to pay UIM benefits until the insured obtains a judgment establishing the liability and

---

[2] The Texas Insurance Code provides that UIM coverage:

> must provide for payment to the insured of all amounts that the insured is *legally entitled to recover* as damages from owners or operators of underinsured vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

Tex. Ins. Code Ann. § 1952.106 (West 2009) (emphasis added).

underinsured status of the other motorist. . . . Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay." 216 S.W.3d at 818. Thus, a UIM contract is unlike many first-party insurance contracts because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party. *Id*.

Though *Brainard* involved a determination as to when presentment of a contract claim was made in order to determine when a party was entitled to attorney's fees, the San Antonio court of appeals subsequently applied the rationale presented in *Brainard* to the issue of abatement. *See id.*; *In re United Fire Lloyds*, 327 S.W.3d at 253, 256. In *In re United Fire Lloyds*, the San Antonio court of appeals concluded that, given the clear holding in *Brainard*, the insurer should not be required to incur litigation expenses on claims that could be rendered moot by the portion of the trial related to UIM benefits and may not have even yet accrued. 327 S.W.3d at 253, 256 (concluding that insured's bad faith claims based on insurance code violations, including failure to properly investigate and evaluate claim, could be rendered moot by portion of the trial related to UIM benefits); *see also In re Old Am. Cnty. Mut. Fire Ins. Co.*, 2012 Tex. App. LEXIS 1293, at *13; *but see In re State Farm Mut. Auto. Ins. Co.*, 2012 Tex. App. LEXIS 6537, at *20 (distinguishing UIM case from *In re United Fire Lloyds,* explaining that there was no dispute that uninsured motorist was negligent and underinsured). Accordingly, the court held that abatement of the insured's extra-contractual claims was required in order to "do justice, avoid prejudice, and further convenience." *In re United Fire Lloyds*, 327 S.W.3d at 265. In light of the supreme court's holding in *Brainard*, we agree that if a decision rendered in favor of American National on Cole's contract claim would render her extra-contractual claims moot, the trial court abused its discretion in refusing to abate her extra-contractual claims.

11

In this case, Cole contends an abatement is not necessary in order to prevent the parties from incurring unnecessary litigation expenses. Cole argues that, unlike most cases involving abatement of extra-contractual claims, at least some of her extra-contractual claims against American National are not premised on a finding that American National wrongfully denied her claim. Instead, according to Cole, these claims are related to American National's conduct in handling her claim and consequently, would not be rendered moot if she did not prevail on her contract claim. Upon reviewing Cole's pleadings in this case, we disagree.

Cole's pleadings reveal that she has asserted, in essence, that American National breached its common-law duty of good faith and fair dealing and committed insurance code violations by failing to offer a prompt and fair settlement of her UIM claim. However, any duty by an insurer to its insured, common-law or statutory, necessarily arises from the contractual relationship between the parties. *See also In re Miller*, 202 S.W.3d at 926 (rejecting argument that insurance code must be construed to allow insured to pursue bad faith claims before adjudicating UIM claim and explaining "[N]o matter how liberally we might construe an insurance code provision, a contract underlies any cause of action involving insurance. This is an inescapable fact."). An insurer obviously has no obligation to settle a claim that it is not contractually obligated to pay. *See Brainard*, 216 S.W.3d at 818 ("When there is no contractual duty to pay, there is no just amount owed."). Thus, an insurer generally cannot be liable on bad faith claims arising from its denial or failure to investigate claims that it has no duty to pay. *See Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (concluding that bad faith claims for improper denial and failure to investigate were negated by determination in breach of contract claim that there was no coverage);

12

*see also Weir v. Twin City Fire Ins. Co.*, 622 F. Supp. 483, 486 (S.D. Tex. 2009) (concluding that if there is no contractual duty to pay UIM claim then insurer cannot be in bad faith for not paying or for not performing proper investigation). Similarly, it follows that a UIM insurer generally cannot be liable for insurance code violations related to delays in payment, such as delays in making a timely offer, on claims that it has no duty to pay. *See Boyd,* 177 S.W.3d at 922 (holding that there can be no liability under article 21.55, now chapter 542 of the insurance code, if insurance claim is not covered by policy); *see also Weir*, 622 F. Supp. at 486 (concluding that if there is no contractual duty to pay UIM claim then insured's bad faith claim for denial or postponing payment fails). Therefore, in this case, all of Cole's extra-contractual claims are premised on a contractual obligation to pay her UIM claim, and Cole does not allege that she has suffered any damages unrelated and independent of her contract claim. *See Boyd*, 177 S.W.3d at 922 (noting that supreme court has left open possibility that insurer's denial of claim it was not obligated to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of policy claim). Accordingly, all of Cole's extra-contractual claims would be rendered moot upon a determination that American National was not contractually obligated to pay her UIM claim.

To prevail on her extra-contractual claims against American National, Cole must necessarily demonstrate that American National was contractually obligated to pay her UIM claim. To do this, Cole must first prove that the other driver negligently caused the accident and that her recoverable damages exceed the driver's liability insurance.[3] Under these circumstances, American

---

[3] Though it is undisputed that Cole accepted the full amount of liability insurance from the other driver, this settlement does not establish UIM coverage. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) (explaining in UIM case where other driver's insurance

National should not be required to put forth the effort and expense of conducting discovery, preparing for trial, and conducting voir dire on claims that would be rendered moot by a determination against Cole on her UIM contract claim. *See In re United Fire Lloyds*, 327 S.W.3d at 253, 256. We conclude that the trial court abused its discretion in failing to abate Cole's contract claim from her extra-contractual claims until her contract claim is resolved.

## CONCLUSION

We conclude that the trial court abused its discretion in denying American National's motion for severance and abatement of Cole's extra-contractual claims. If mandamus relief is not granted, American National would lose substantial rights related to the exclusion of the settlement offer as evidence at trial and by being required to prepare and try claims that may be rendered moot. *See Millard*, 847 S.W.2d at 675. Thus, American National does not have an adequate remedy by appeal. *See id*. Accordingly, we conditionally grant the writ of mandamus. The trial court is ordered to vacate that portion of its June 4, 2012 order denying American National's alternative motion for severance and abatement. Further, the trial court is ordered to grant American National's alternative motion for severance and abatement, severing and abating Cole's extra-contractual claims pending

---

tendered policy limit that "neither a settlement nor an admission of liability from the tortfeasor establishes UIM coverage"); *but see In re State Farm Mut. Auto. Ins. Co.*, No. 08-12-176-CV, 2012 Tex. App. LEXIS 6537, at *20 (Tex. App.—El Paso Aug. 8, 2012, orig. proceeding) (concluding that because there was no dispute that the insured had reached policy limits settlement with underinsured motorist, insured had proven negligence and underinsured status of other motorist). This is because a jury could always still find that the other motorist was not at fault or award damages that do not exceed the tortfeasor's liability insurance. *Brainard*, 216 S.W.3d at 818.

resolution of the breach of contract claim. The writ will issue only if the trial court fails to comply within fourteen days.

_____

Diane M. Henson, Justice

Before Justices Puryear, Pemberton and Henson

Filed: September 25, 2012