# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00515-CV

---

### In re Allstate Fire and Casualty Insurance Company

---

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## M E M O R A N D U M   O P I N I O N

Allstate Fire and Casualty Insurance Company petitions for writ of mandamus, urging that the trial court abused its discretion by failing to sever and abate the real party in interest's extracontractual claims against Allstate from her claims seeking to establish Allstate's contractual duties to pay benefits under an uninsured/underinsured motorist (UM/UIM) policy. We will conditionally grant the writ.

## BACKGROUND

The real party in interest, Erika Brandyburg, sued Bryan Williams and Allstate to recover for injuries and damages she suffered while in a parking lot when Williams backed his vehicle into hers. She alleged negligence, negligence per se, and gross-negligence claims against Williams. She sought a declaratory judgment establishing the amounts due to her under an Allstate UM/UIM policy. She also alleged extracontractual claims against Allstate for violations of Chapters 541 and 542 of the Texas Insurance Code provisions barring misrepresentation and refusal to pay a claim without conducting a reasonable investigation, and requiring a good-faith

attempt to settle a claim to which the insurer's liability has become reasonably clear and a prompt explanation of the denial of a claim.

Allstate filed a motion to sever the extracontractual causes of action from the remaining claims. Allstate requested that the severed claims be abated until Williams's negligence and underinsured status are determined through a judicial finding.

Brandyburg then filed her First Amended Petition in which she no longer included Williams in the list of parties. Instead of the negligence claim against Williams, she claimed injury and damage from third-party uninsured Williams's negligence, negligence per se and gross negligence.[1] Brandyburg added allegations specifying the terms of the settlement offer Allstate made. She also added a claim styled "Suit for UM/UIM Benefits" under which she says she "brings this suit for the UM/UIM policy limits of $30,000.00 available to her under the ALLSTATE Insurance Policy." Brandyburg retained her claim for declaratory relief against Allstate establishing the amount it owes her under the insurance policy as well as claims for violations of Insurance Code Chapters 541 and 542.

The trial court denied Allstate's motion to sever and abate without stating a basis.

## STANDARD OF REVIEW

Mandamus will issue to correct an abuse of discretion when an adequate remedy by appeal does not exist. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). A trial court abuses its discretion when it acts without reference to guiding rules or principles or acts in an arbitrary or unreasonable manner. *In re Garza*, 544 S.W.3d at 840. A trial

---

[1] Though Brandyburg's negligence per se and gross-negligence claims are against an unnamed defendant, context dictates that the defendant is Williams.

2

court also abuses its discretion by failing to analyze or apply the law correctly. *In re Allstate Cnty. Mut. Ins.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court. *Liberty Nat'l Fire Ins. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (orig. proceeding); *see* Tex. R. Civ. P. 41. The trial court's broad discretion in determining whether to grant severance is not unlimited. *In re Gen. Agents Ins.* 254 S.W.3d 670, 673 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Severance is appropriate if: (1) the controversy involves more than one cause of action, (2) the severed claim is one that could be asserted independently in a separate lawsuit, and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues. *Liberty Nat'l*, 927 S.W.2d at 629. The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

If a trial court abuses its discretion in denying a motion to sever and abate extracontractual claims, there is no adequate remedy by appeal. *In re Geico Cnty. Mut. Ins.*, No. 05-21-00226-CV, 2021 WL 3754576, at *2 (Tex. App.—Dallas Aug. 25, 2021, orig. proceeding) (mem. op.); *U.S. Fire Ins. v. Millard*, 847 S.W.2d 668, 675-76 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding). In applying this standard, we must weigh the prejudice to the relator by denying severance against the prejudice that could result from ordering severance. *Womack v. Berry*, 291 S.W.2d 677, 683 (Tex. 1956) (orig. proceeding); *In re Reynolds*, 369 S.W.3d 638, 650 (Tex. App.—Tyler 2012, orig. proceeding).

3

**DISCUSSION**

A UIM insurance contract provides policy benefits to the insured for amounts that he or she is legally entitled to recover as damages from owners and operators of uninsured or underinsured motor vehicles because of bodily injury or property damage. *See* Tex. Ins. Code § 1952.106. "[A] UIM contract is unlike many first-party insurance contracts because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." *In re American Nat'l Cnty. Mut. Ins.*, 384 S.W.3d 429, 437 (Tex. App.—Austin 2012, orig. proceeding). Therefore, to establish an insurer's contractual obligation to pay UIM benefits, the insured must obtain legal determinations as to the third-party's liability and underinsured status. *Brainard v. Trinity Universal Life Ins.*, 216 S.W.3d 809, 818 (Tex. 2006). In addition to an insurer's contractual obligations, the common law and the Texas Insurance Code impose extracontractual duties on insurers related to the handling and processing of insurance claims. *See Arnold v. National Cnty. Mut. Ins.*, 725 S.W.2d 165, 167 (Tex. 1987); *see also* Tex. Ins. Code §§ 541.060, .151-.152.

Allstate contends that, because Brandyburg has not obtained a judgment establishing her entitlement to UIM benefits under the policy, the trial court had a duty to sever her extracontractual claims from the claims on her insurance policy and to abate proceedings on the extracontractual claims. Extracontractual claims, such as bad-faith claims, are independent claims from contract claims related to insurance coverage and thus are subject to severance. *Liberty Nat'l*, 927 S.W.2d at 629; *In re American*, 384 S.W.3d at 433. Extracontractual claims generally must be tried separately from and after resolution of an insured's contractual claim to UIM benefits. *See In re State Farm Mut. Auto. Ins.*, 629 S.W.3d 866, 876 (Tex. 2021) (orig. proceeding) (directing trial court to order bifurcated trial on issues of coverage and statutory

4

claims); *In re American*, 384 S.W.3d at 438 (directing trial court to sever and abate insured's extracontractual claims pending determination on coverage); *see also In re Allstate Fire & Cas. Ins.*, No. 12-17-0266-CV, 2017 Tex. App. LEXIS 10428, at *4 (Tex. App.—Tyler Nov. 8, 2017, orig. proceeding) (mem. op.) (concluding that "extra-contractual claims must be severed and abated until the [UIM] breach of contract claim is determined"); *In re Progressive Cnty. Mut. Ins.*, 439 S.W.3d 422, 426 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (same). The rationale for this general rule is two-fold: (1) extracontractual claims may be rendered moot because a determination of no coverage generally precludes extracontractual claims, and thus a joint trial could waste time and resources of the court and the parties; and (2) a joint trial concerning contractual obligation and the violation of extracontractual duties could unduly prejudice the insurer because evidence of a settlement offer is often excluded with respect to contract claims as implying an admission of liability, but is admissible on extracontractual claims regarding whether the insurer made a good-faith attempt to resolve the claim. *In re State Farm*, 629 S.W.3d at 876.

Brandyburg argues that the trial court did not abuse its discretion in refusing to sever her extracontractual claims because bifurcation, not severance and abatement, is the proper procedure when the only claim asserted is for violations of the insurance code, relying on *In re State Farm*, 629 S.W.3d 866. In that case, bifurcation was requested and denied at trial; relying on "sever-and-abate cases," the Texas Supreme Court ordered bifurcation because (1) that was the remedy requested and (2) there was no contract claim to sever from the extracontractual claims. *Id.* at 877. In this case, severance and abatement was requested and there is no indication that bifurcation was requested; further, Brandyburg's pleadings include a claim for declaratory relief to establish Allstate's contractual duty to pay UIM benefits, which is a claim on the contract. *See USAA Tex. Lloyds v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018) (explaining that decisions have

5

referred "interchangeably to both 'breach' and 'coverage'" but focus was on whether insured was entitled to benefits under policy). Thus, contrary to her assertion and unlike the plaintiff's claims in *In re State Farm*, Brandyburg's suit is not limited to extracontractual claims against Allstate for violations of the insurance code. *See In re State Farm*, 629 S.W.3d. at 874. Severance and abatement is appropriate when, as in this case, an insured seeks a determination as to entitlement to UIM benefits and also brings extracontractual claims against the insured. *See In re American*, 384 S.W.3d at 439.

Brandyburg also contends that severance and abatement is not required because not all extracontractual claims are predicated on a determination that the insured is entitled to benefits. An insurer's statutory violation can conceivably cause an injury that is independent of the loss of policy benefits and that is compensable even if the policy does not grant benefits for that injury, so long as the injury is not predicated on and does not flow or stem from the policy benefits. *In re State Farm*, 629 S.W.3d at 872-73;. *Menchaca*, 545 S.W.3d at 499-500; *see also Twin City Fire Ins. v. Davis*, 904 S.W.2d 663, 666 n.3 (Tex. 1995). However, Brandyburg does not allege that she has sustained an injury in this case that is independent of her right to receive benefits under the policy. Her pleadings allege damages arising from Allstate's handling and denial of her claim for UIM benefits and are premised on a theory that if Allstate had handled her claim in compliance with the Insurance Code it would have paid her UIM claim without the necessity of her filing suit. Consequently, Brandyburg's extracontractual claims are predicated on her entitlement to receive policy benefits. Because resolution of Brandyburg's claim for declaratory relief as to Allstate's liability for policy benefits could moot at least some of her Insurance Code claims and because trying the Insurance Code claims would involve evidence of settlement efforts inadmissible in trial of the contract claims, the contract claim should be tried first. The expenses of discovery and trial

6

attributable to the Insurance Code could be wasted (for both sides) if Allstate is not liable on the underlying insurance policy.

Brandyburg argues that trying the contract-based claims separately and before the extracontractual claims would require redundant proof at the second trial "because the claims are identical and so interwoven that they involve the same facts and issues requiring both claims to be proved with the same evidence." While the claims may have overlapping elements, there are different elements that, as discussed, the Texas Supreme Court has determined benefit from separate hearings. *See In re State Farm*, 629 SW.3d at 876-77. Further, collateral estoppel could prevent relitigation of common issues in a second lawsuit between the same parties. *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721-22 (Tex. 1990); *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

Brandyburg contends that severance and abatement would encourage insurers to "low ball" their insureds and allow them to pass on the responsibility of determining whether liability is reasonably clear from their employees to the judicial system. However, under the Insurance Code, insurers retain the responsibility of determining whether liability is reasonably clear. *See* Tex. Ins. Code §§ 541.060(a)(2)(A), 542.003(b)(4). The legislature has decided that treble damages is the appropriate remedy for knowing violations of these Insurance Code responsibilities. *See id.* § 541.152(b).

Brandyburg also warns that requiring severance would eviscerate statutory bad-faith liability in all UIM cases. She contends that the supreme court held that "once an insured obtains a judgment against an underinsured third-party, the insured no longer has *any* cause of action against his or her insurer for breaching its statutory duties of handling claims with good faith," citing *Mid-Century Ins. Co. v. Boyte*, 80 S.W.3d 546 (Tex. 2002). But the supreme court

7

in that case held that the plaintiff had no bad-faith cause of action related to the policy for *post-judgment* conduct; the insurer's actions regarding payment of the amount due under the policy as set by the judgment is the action of a judgment debtor, not an insurer. *Id.* at 548-49. In the context of UIM coverage disputes, bad-faith liability may arise when an insurer fails to a settle a claim for benefits prior to a legal determination establishing entitlement to UIM benefits. *Burgess v. Allstate Fire & Cas. Ins.*, No. 03-20-00088-CV, 2021 WL 5498758 (Tex. App.—Austin Nov. 24, 2021, no pet. h.). Severance of the claims would not bar plaintiffs from seeking recovery for bad-faith settlement negotiations based on the insurer's pre-judgment actions.

## CONCLUSION

Because joint trial of the contract claim and the Insurance Code claims would prejudice Allstate in its defense of at least one set of claims and because the trial of the Insurance Code claims before the contract claims could cause needless expenses of time, effort, and money, we conclude that the trial court abused its discretion by denying Allstate's motion to sever and abate. We conditionally grant Allstate's petition for writ of mandamus and direct the trial court to withdraw its denial of Defendant Allstate Fire and Casualty Insurance Company's Motion to Sever and to grant that same motion. The writ will issue only if the trial court fails to comply.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Filed: January 12, 2022

8